IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY-ELLEN MARLEY,<br><br>                Plaintiff,<br><br>    v.<br><br>PATRICK R. DONAHUE, *POSTMASTER GENERAL OF THE UNITED STATES POSTAL SERVICE*, and THE UNITED STATES POSTAL SERVICE,<br><br>                Defendants. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>Civil No. 14-1597 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Mary-Ellen Marley, pro se
14 Hillside Ave.
Westville, N.J. 08093

Anne B. Taylor, Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street
P.O. Box 2098
Camden, N.J. 08101
    Attorney for Defendants

**SIMANDLE, Chief Judge:**

# I.   INTRODUCTION

In this employment discrimination and retaliation litigation, pro se Plaintiff, Mary-Ellen Marley (hereinafter, "Plaintiff"), generally alleges that her longtime former federal employer, the United States Postal Service (hereinafter, "Defendants" or the "Postal Service") engaged in an array of discriminatory, retaliatory, and otherwise unlawful conduct

during the final six years of her employment with the Postal Service.  (See generally Compl.)  Indeed, Plaintiff's over 800 page Complaint points to a laundry list of alleged instances and prior Equal Employment Opportunity proceedings,[1] arising from her continual charges of workplace misconduct. (See generally id.)

Plaintiff's 10-count Complaint alleges, in particular, that the Postal Service: (1) subjected her to a hostile and abusive work environment in violation of Title VII, the Rehabilitation Act, and the Age Discrimination in Employment Act (hereinafter, "Count I"); (2) engaged in ultra vires conduct (hereinafter, "Count II"); (3) violated her constitutional right to privacy (hereinafter, "Count III"); (4) infringed upon her Fourth Amendment Rights in violation 42 U.S.C. § 1983 (hereinafter, "Count IV"); (5) committed mail fraud in violation 18 U.S.C. § 1341 (hereinafter, "Count V"); (6) violated the Family Medical Leave Act and the Americans with Disabilities Act (hereinafter, "Count VI"); (7) infringed upon her First Amendment Rights in violation 42 U.S.C. § 1983 (hereinafter, "Count VII"); (8) violated the Equal Protection Clause (hereinafter, "Count VIII"); (9) subjected her to reprisal in retaliation for engaging in protected activities (hereinafter, "Count IX); and

---

[1] Indeed, between 2007 and 2009, Plaintiff initiated EEO proceedings on eight separate occasions: 4C-080-0020-07, 4C-080-0029-07, 4C-080-0057-07, 4C-080-0080-07, 4C-080-0024-08, 4C-080-0065-08, 4C-080-0015-09, 4C-080-0096-09. (See Compl. at 11 ¶ 11.)

(10) violated the Rehabilitation Act (hereinafter, "Count X"). (See generally id.)

The Postal Service now moves to dismiss all of Plaintiff's claims [see Docket Item 20], except for that of retaliation arising out of discipline imposed in 2009, on the grounds that Plaintiff failed to first exhaust administrative remedies, and because many of Plaintiff's claims fail to be cognizable as independent causes of actions (or, indeed, even a cause of action at all), and/or are untimely.[2]  (Defs.' Br. at 8-18.) Plaintiff, for her part, largely provides no response to the Postal Service's substantive challenges to the viability of her claims (see generally Pl.'s Opp'n), and instead reiterates her lengthy recitation of the underlying events, but ultimately concedes that the present suit deals only with claims "brought forth on August 24, 2009." (Pl.'s Sur-reply at 1.)

---

[2] Defendants also move to dismiss the United States Postal Service, on the grounds that the head of the Postal Service, Patrick R. Donahue, amounts to the only cognizable Defendant. In an employment action against the Postal Service, the Postmaster General—here, Mr. Donahue—constitutes the only proper Defendant.  See 42 U.S.C. § 2000e-16(c) (generally noting that a federal employee who files a civil action alleging employment discrimination must name only the head of the department, agency or unit as the defendant, and not specific supervisors and/or the entity itself); Kirkland v. Runyon, 876 F. Supp. 941, 943 n. 1 (S.D. Ohio 1995) (substituting the Postmaster General as the sole party defendant).  Defendants' motion will, accordingly, be granted in this respect, and the United States Postal Service will be dismissed from this action and terminated from the docket.

For the reasons that follow, the Postal Service's motion to dismiss will be granted, and all Counts of Plaintiff's Complaint will be dismissed in their entirety with prejudice, except for Count IX, a Title VII claim for retaliation arising out of actions taken and discipline imposed by the Postal Service in the late summer and fall of 2009.

## II. BACKGROUND

### A. Factual and Procedural Background[3]

Plaintiff started her thirty-year postal career on November 29, 1980 at the Post Office in Sewell, New Jersey, and served seemingly without incident for nearly twenty-five years.[4]  (See Compl. at 33-35.)  Indeed, from November 1980 until March 2005, Plaintiff received favorable commendations for her performance and multiple advancements, including a promotion to Safety Director of the Sewell Facility.  (See id., see also Exs. 60-62

---

[3] For purposes of the pending motion, the Court accepts as true the version of events set forth in Plaintiff's Complaint, and construes Plaintiff's pleading, as it must, liberally.  See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011) (describing the liberal construction required of pro se submissions); Capogrosso v. Sup. Ct. of N.J., 588 F.3d 180, 184 (3d Cir. 2009) (per curiam) (same).

[4] As stated above, Plaintiff's Complaint, together with its exhibits, spans over 800 pages, and includes employment history immaterial to the claims she has presently asserted.  The density of Plaintiff's submissions makes it difficult to discern every detail of the allegedly unlawful conduct. Nevertheless, the Court has, upon careful inspection of the voluminous record, culled the salient details from Plaintiff's pleading, with an eye towards providing a comprehensive yet abbreviated recitation of the essential allegations.

to Compl.)  Thereafter, however, Plaintiff claims that the
Postal Service subjected her an array of harassment and
disparate treatment, in retaliation for "'whistle blowing' on
the higher Management in the [Sewell] Post Offce."  (Compl. at
42 ¶ 41.)

Plaintiff's employment problems, as alleged, specifically
appear to have begun in 2005, following an internal
investigation into the conduct of then-Postmaster, Evelyn
Hunley.  (Id. at 35 ¶ 11.)  In connection with the
investigation, Plaintiff provided "truthful[]" testimony, but
disclosed information "not" in Ms. Hunley's "favor."  (Id. at 35
¶ 11.)  She informed investigators, in particular, that Ms.
Hunley "peddl[ed]" her own business while on Postal Service time
by selling "Pre-Paid Legal out of the Sewell Post Office
Facility" in violation of "Postal Policy."  (Id.; see also Ex.
68 to Compl.)

Shortly thereafter, Postal Service management, and
specifically Ms. Hunley, allegedly subjected her to an array of
retaliatory conduct for her "'whistleblower' comments,"
including dismissing her from the Safety Director position,
denying numerous requests for overtime, and constantly
scrutinizing her job performance.  (Compl. at 36 ¶¶ 15-16, 38 ¶
26, 39 ¶ 31, 40.)  In addition, the Postal Service imposed
formal discipline against her on two occasions: first for

accruing overtime without prior authorization from management (see Ex. 64 to Compl.), and then for "experienc[ing] an at-fault motor vehicle accident." (Ex. 66 to Compl.) The first resulted in the issuance of a written warning, while the second led to the imposition of a seven (7) day "no-time-off suspension." (Id.)

Then, on November 28, 2005, Plaintiff received a "14 calendar day no-time-off suspension" for violating the Postal Service's "Standards of Conduct." (Compl. at 40 ¶ 34; see also Ex. 68 to Compl.) The suspension charged her, in particular, with becoming disruptive, raising her voice, and acting in a threatening manner towards her supervisor, during a conversation that occurred on November 10, 2005. (See Compl. at 39 ¶ 30, 40 ¶ 35; see also Ex. 69 to Compl.) Following issuance of the suspension, Plaintiff challenged the suspension under the Postal Service's grievance procedures (see Ex. 69 to Compl.), claiming that management "singled [her] out ... as a form of retaliation for her adverse comments/statements regarding the Sewell Post Office Management/Postmaster/Supervisor." (Compl. at 42 ¶ 40; see also Ex. 70 to Compl.) After her supervisor denied her review at the initial stage of the grievance proceeding, the Dispute Resolution Team "expunged" the suspension during a subsequent review, reasoning that management lacked "just cause to issue the 14-day suspension." (Ex. 70 to Compl.)

In the following year, Plaintiff approached the Officer-in-Charge of the Sewell facility, with allegations that another supervisor, Tony Tropiano, sexually harassed her.  (See id. at 42 ¶ 43.)  Rather than offer Plaintiff assistance, however, the Management of the Sewell Facility allegedly retaliated against her by subjecting her to various work evaluations, issuing various warning letters for "**UNSATISFACTORY JOB PERFORMANCE/FAILURE TO FOLLOW INSTRUCTIONS**," and ultimately referring her to an Employee Assistance Program Counselor to discuss her alleged alcoholism.  (See id. at 45 ¶¶ 51-82 (emphasis in original); see also Ex. 72 to Compl.)  As a result, Plaintiff claims that the stress and anxiety of the "hostile [work] environment" in the Sewell Facility plagued her throughout 2006.  (Compl. at 50 ¶ 65; see also Ex. 73 to Compl.)

Indeed, Plaintiff filed a workers' compensation Claim for "'stress and anxiety caused by harassment [on] the job.'"  (Ex. 73 to Compl.)  On January 4, 2007, however, the U.S. Department of Labor denied her claim for compensation benefits, on the basis that she failed to demonstrate "a medical condition caused or aggravated by compensable factors of employment."  (Ex. A to Compl.; see also Compl. at 54 ¶ 82.)  In support of its denial, the Department of Labor acknowledged Plaintiff's complaints of workplace abuse and misconduct, but found no "supportive evidence" to buttress her assertions, and deemed Plaintiff's

7

"emotional reaction" (i.e., stress and anxiety) to the otherwise

"proper" actions of management "self-generated" and "not

compensable" through the workers' compensation scheme.  (Ex. A

to Compl.)

Following the adverse workers' compensation decision,

Plaintiff filed an Equal Employment Opportunity (hereinafter,

"EEO" or "EEOC") Complaint on February 27, 2007, alleging that

she had been denied workers' Compensation on account of her sex,

age, and mental disability.[5]  (Ex. D to Compl.; Compl. at 56 ¶

90.)  The agency, however, deemed her EEO Complaint as an

improper "collateral attack" on the Department of Labor's

workers' compensation decision, and dismissed the Complaint on

---

[5] The EEO complaint process involves both the federal agency
involved the discrimination and the Equal Employment Opportunity
Commission (hereinafter, the "EEOC").  The "federal agency in
which the employment discrimination complaint arose"
specifically handles "the complaint at the counseling, formal
complaint, and investigation stages of the complaint process,"
while the EEOC becomes involved in the process at the hearing
stages and after investigation by "providing administrative
judges to conduct hearings, and at the appeals stage by deciding
appeals from final agency decisions and agency final actions."
(Ex. G to Compl.)  A decision upon an appeal, if affirmed on
reconsideration, results in a complainant's right to file a
civil action within a specified period, and constitutes the
<u>final</u> step of <u>full</u> administrative exhaustion. For present
purposes, the Court notes, at the outset and as explained in
greater detail below, that Plaintiff's own submissions make
clear that she received a right to sue letter on three
occasions: June 21, 2007, August 13, 2007 (following
reconsideration), and December 13, 2013 (<u>see</u> Exs. D & 58 to
Compl.), with the latter specifically spawning the pending
litigation (and the others having expired <u>without</u> action from
Plaintiff).

March 16, 2007 for failure to state a claim (but advised Plaintiff of her right to file suit in an appropriate federal forum). (Ex. D to Compl.) On appeal, the EEOC affirmed the dismissal on June 21, 2007, and then denied Plaintiff's request for reconsideration on August 13, 2007 (again with notice of Plaintiff's right to pursue a civil action "in an appropriate United States District Court **within ninety (90) calendar days**").[6] (Id. (emphasis in original); see also Compl. at 57 ¶¶ 99-102.)

After an incident in which Sewell management convened a "floor talk and accused [all mail carriers] of time wasting practices," Plaintiff initiated another EEO proceeding in September 2007, charging the Postal Service with discrimination on the basis of age and gender. (Ex. E to Compl.; see also Compl. at 58 ¶ 104.) Because an inquiry revealed that "service talks" constitute a routine practice, the EEOC declined to take any further action, but again advised Plaintiff of her right to file a formal Complaint. (Ex. E to Compl.) Plaintiff, however, did not pursue this claim through a formal Complaint. Rather, after her supervisor "disapproved" her request for annual leave, Plaintiff filed a third EEO charge on January 4, 2008, alleging that the Postal Service discriminated against her on account of her "extreme stress and anxiety" and age. (Id.; Compl. at 59 ¶ 105.) After an inquiry into the alleged misconduct, the EEOC

---

[6] Plaintiff, as stated above, initiated no such civil action.

again declined to take any further action (but, as always, advised Plaintiff of the procedure to seek additional review through the EEO process).[7]  (<u>See</u> Ex. E to Compl.)

Then, on April 28, 2008, Plaintiff suffered a workplace injury to her finger, and again requested workers' compensation benefits for her injury, as well as covered leave under the Family and Medical Leave Act (hereinafter, "FMLA").  (<u>See</u> Compl. at 60 ¶ 110; Ex. G to Compl.)  After allegedly being denied both benefits, Plaintiff attempted to initiate another EEO proceeding on May 3, 2008, charging the "unknowledgeable" and "incompetent" management with harassment and intimidation.  (Compl. at 60 ¶ 111.)  Plaintiff, however, submitted her EEO forms directly to the EEOC, rather than to the Postal Services' internal EEO investigative services, and so the EEOC returned her forms without further action and with instructions concerning appropriate submission.  (<u>See</u> Ex. G to Compl.)  Following resubmission, the EEO action proceeded through the administrative process, until its dismissal with prejudice <u>at Plaintiff's request</u> by the Administrative Judge.  (<u>See</u> Ex. R to Compl.)

In the months that followed this complaint, namely, July, August, September, and October of 2008, Plaintiff received a series of official reprimands and "no-time-off" suspensions for

---

[7] Plaintiff, again, appears to have taken no further action.

"**UNSATISFACTORY JOB PERFORMANCE**," all stemming from her alleged failure to submit the documentation necessary for overtime and/or "auxiliary assistance." (Ex. H to Compl. (emphasis in original); see also Compl. at 61 ¶¶ 116-24.) Then, on December 1, 2008, the Postal Service notified Plaintiff that she would be removed from service on January 2, 2009 for "**Unsatisfactory Job Performance**" and particularly for "failure to follow instructions" by improperly "expanding [her] street time" in order to incur overtime. (Ex. J to Compl. (emphasis in original).) The notification alleged that Plaintiff "blatantly ignored" mandatory procedures and "deliberated undermined the authority of management by creating unauthorized overtime" for herself. (Id.) Plaintiff refused to sign the notice, but left the Sewell facility on that date without incident. (Id.)

Plaintiff initiated a union grievance and EEO proceeding on the following day, December 2, 2008, charging the Postal Service with retaliation based upon prior EEO activity, and discrimination on account of Plaintiff's age and gender. (See Ex. L to Compl.) Following an investigation into Plaintiff's union grievance (see, e.g., Ex. P to Compl.), the grievance-arbitration team determined that management lacked "just cause to issue a Notice of Removal,"[8] and rescinded Plaintiff's removal

---

[8] In rescinding the removal, the Dispute Resolution Team specifically relied upon a discrepancy in the Sewell facility's

11

on January 22, 2009.  (Ex. O to Compl.)  As a result, Plaintiff

returned to work on January 29, 2009 (see Compl. at 66 ¶ 142),

but appears to have continued to pursue EEO remedies relative to

the removal action.  (See, e.g., Exs. S & U to Compl.)  Given

the rescission of Plaintiff's removal through the grievance

process, however, the EEOC found "no reasonable expectation"

that the allegedly unlawful action would recur, and dismissed

Plaintiff's EEO complaint as moot.[9]  (Pl.'s Sur-reply at 1; see

also Ex. 55 to Compl.)

Plaintiff's employment continued without significant (or at

least documented) incident until August 24, 2009, at which time

her "second-level manager" dismissed her from work for the day,

for acting "belligerently" towards him and otherwise "causing a

disturbance" within the Sewell facility.  (Ex. 55 to Compl.;

Compl. at 12 ¶ 13.)  Shortly thereafter, the Sewell Postmaster,

Ms. Hunley, placed Plaintiff on "off-duty status without pay,"

following her "verbal tirade and threatening actions towards the

---

handling of overtime requests and management's unexplained
"delay in conducting the investigation" into Plaintiff's
workplace misconduct.  (Ex. O to Compl.)  The Dispute Resolution
Team took issue, in particular, with the fact that management
waited over six (6) weeks to conduct an investigatory interview
into Plaintiff's alleged misconduct.  (See id.)

[9] Plaintiff purports to have completed appeal paperwork relative
to the EEOC's dismissal, but acknowledges on the face of appeal
and in connection with the pending briefing, that no final
agency decision issued (see Ex. W to Compl.; Pl.'s Sur-reply),
presumably because she "agreed" to "drop[]" this particular EEOC
charge.  (Pl.'s Sur-reply at 1.)

Postmaster" on October 5, 2009.  (Exs. 5 & 55 to Compl.; Compl. at 16 ¶ 23.)  As a result of these episodes, the Postal Service issued Plaintiff a Notice of Removal on October 20, 2009 for "**Improper Conduct**" and "**Unsatisfactory Job Performance**."  (Ex. 5 to Compl. (emphasis in original).)

Following her removal, Plaintiff filed a union grievance and a companion EEO appeal.  (See, e.g., Ex. 10 to Compl.) Through the union grievance procedure, Plaintiff obtained a settlement that again rescinded and expunged the Notice of Removal, enabling her to return to active duty and to receive an award of back pay from the effective date of removal until her return to active duty.[10]  (See Exs. 5-11 to Compl.; see also Compl. at 17 ¶¶ 27-40.)  Following a similar sequence of warning letters and a notice of removal (see, e.g., Exs. 12, 14, 16, 17, 22, & 23 to Compl), Plaintiff resigned from the Postal Service on September 10, 2010, because she could no longer tolerate management's "behavior" towards her. (Ex. 24 to Compl.)

Meanwhile, the investigation and review of Plaintiff's EEO Complaint concerning the October 20, 2009 Notice of Removal (alleging discrimination based upon retaliation) continued, and following a lengthy investigative process, the Administrative Judge conducted a hearing on April 26-27, 2012.  (See, e.g.,

---

[10] The settlement followed the grievance-arbitration panel's declaration of an "**IMPASSE**" in relation to Plaintiff's grievance. (Ex. 10 to Compl. (emphasis in original).)

Exs. 19-21, 25-45 to the Complaint.)  Based upon the "hearing

and the evidence adduced," however, the Administrative Judge

found that the Postal Service "did not discriminate" against

Plaintiff on the basis of reprisal.  (Ex. 46 to Compl.)  Rather,

the Administrative Judge determined that the Postal Service

disciplined Plaintiff on account of her "flagrant and repeated

violations of postal policy and regulations pertaining to

behavior and performance" (id.) and entered Judgment in favor of

the Postal Service on November 5, 2012.  (See Ex. 47 to Compl.)

Plaintiff took a timely appeal from that "Final Agency Decision"

(see Exs. 48-53 to Compl.), but the EEOC found "no reason to

disturb the final action," and affirmed the Administrative

Judge's final agency decision on June 4, 2013.  (Ex. 55 to

Compl.)  The EEOC then denied her request for reconsideration on

December 13, 2013, and advised her of the right "to file a civil

appropriate in an appropriate United States District Court

**within ninety (90) calendar days**" from the denial.  (Ex. 58 to

Compl. (emphasis in original).)

    Plaintiff timely filed this action, and the pending motion

followed.[11]

―――――――――――――――

[11] On October 14, 2014, the Court denied the Postal Service's
motion for a more definite statement, on the grounds that
Plaintiff's Complaint, though lengthy, sufficiently described
the events giving rise to her employment discrimination and
retaliation claims. See Marley v. Donahue, No. 14-1597, 2014 WL
5152618 (D.N.J. Oct. 14, 2014). In other words, the Court found

14

### III. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 12(b)(6), the court must "'accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the Complaint, the plaintiff may be entitled to relief.'" Fleisher v. Standard Ins. Co., 679 F.3d 116, 120 (3d Cir. 2012) (citations omitted).

In applying this standard to pro se pleadings and other submissions, as here, the Court must liberally construe the well-pleaded allegations, and draw all reasonable inferences in favor of the pro se litigant. Higgs, 655 F.3d at 339 (3d Cir. 2011); Capogrosso, 588 F.3d at 184.  Despite this liberality, however, a pro se complaint must still "contain sufficient factual matter, accepted as true," to "'state a [plausible] claim to relief.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

---

"the overall tenor of Plaintiff's Complaint" enabled the Postal Service, "through appropriate effort, to formulate a good faith response to Plaintiff's Complaint, even if in the form of a blanket denial of her allegations." Id. at *2 (citation omitted). The Court, however, expressed no opinion on "the viability of Plaintiff's claims, beyond that incidentally required by the Court's evaluation under Rule 12(e)." Id. at *3 n.1.

## IV.   DISCUSSION

As stated above, Plaintiff's Complaint contains a bevy of claims resulting from her lengthy employment with the Postal Service.  For the reasons that follow, Counts I, II, III, IV, V, VI, VII, VIII, and X of Plaintiff's Complaint will be dismissed with prejudice, on an array of grounds.

### A. Plaintiff's Discrimination and Hostile Work Environment Claims, Embodied in Counts I and X, Must be Dismissed with Prejudice

In Counts I, IX, and X, Plaintiff alleges that the Postal Service subjected her to a hostile work environment and to retaliation, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000(e), et seq. (hereinafter, "Title VII"),[12] the Rehabilitation Act of 1973, 29 U.S.C. § 701, et seq. (hereinafter, the "RA"),[13] and the Age Discrimination in Employment Act, 29 U.S.C. § 621, et seq. (hereinafter, the

---

[12] Title VII generally provides that it is "an unlawful employment practice for an employer ... to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).
[13] The Rehabilitation Act generally provides that "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

"ADEA").[14]   (See Compl. at 5, 9.)   Critically, however, these

claims are subject to extensive exhaustion requirements and

limitations periods, which Plaintiff substantially failed to

follow in this instance.

Specifically, a federal employee seeking redress for

unlawful workplace discrimination and/or retaliation must first

exhaust administrative remedies against the federal employer

prior to filing suit in federal court.[15]   See 42 U.S.C. § 2000e-

16(c); see also 29 C.F.R. § 1614.   A plaintiff filing claims

under Title VII, the RA, and/or the ADEA, as here, must, in

particular, first pursue the EEOC's administrative process

before seeking judicial review.[16]   See Wilson v. MWM, Inc., 475

---

[14] The ADEA provides, in relevant part, that "[i]t shall be
unlawful for an employer ... to fail or refuse to hire or to
discharge any individual or otherwise discriminate against any
individual with respect to his compensation, term, conditions,
or privileges of employment, because of such individual's age."
29 U.S.C. § 623(a)(1).

[15] The exhaustion requirement encourages "quicker, less formal,
and less expensive resolution of disputes within the Federal
Government and outside of court."   West v. Gibson, 527 U.S. 212,
218-19 (1999).   Indeed, exhaustion affords the EEOC an essential
"opportunity to settle disputes through conference,
conciliation, and persuasion," thereby avoiding unnecessary
litigation.   Webb v. City of Phila., 562 F.3d 256, 262 (3d Cir.
2009).

[16] The exhaustion requirement differs slightly between Title VII,
the RA, and the ADEA.   Specifically, a federal employee filing a
Title VII and/or RA claim must pursue and exhaust administrative
remedies before initiating an action in federal court.   Williams
v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997).   In general, this
process entails: (1) making contact with an EEO counselor within
forty-five (45) days of the alleged discriminatory action; (2)
filing a formal complaint with the EEOC within fifteen (15) days

F.3d 166, 173 (3d Cir. 2007) (noting that Title VII and RA claims brought by federal employees against federal employers require exhaustion of administrative remedies); Freed v. Consolidated Rail Corp., 201 F.3d 188, 194 (3d Cir. 2000) (same); Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997) (same); Slingland v. Donahoe, 543 F. App'x 189, 193 (3d Cir. 2013) (describing the exhaustion requirement under the ADEA). In other words, a federal employee's claims under Title VII, the RA, and the ADEA must be, and routinely are, dismissed if the employee fails to properly exhaust.  See, e.g., Scheidt v. Donahoe, No. 13-836, 2014 WL 6991982, at *3 (D.N.J. Dec. 10, 2014) (dismissing an RA claim for failure to exhaust); Fanciullo

---

from receipt of the agency's final decision; and then (3) appealing the agency's final decision to the EEOC or filing a civil action in federal district court within ninety (90) days of the agency's decision.  See 29 C.F.R. §§ 1614.105-1614.109, 1614.401, 1614.407(a); Green v. Postmaster Gen., 437 F. App'x. 174, 177-78 (3d Cir. 2011).  A federal employee suing under the ADEA, by contrast, has two alternative routes to judicial review: (1) file directly in federal court after providing the EEOC with at least thirty (30) days' notice of an intent to sue, within 180 days of the alleged unlawful discrimination; or (2) invoke the EEOC's administrative process and then sue, within the necessary period, if dissatisfied with the outcome. Patnaude v. Gonzales, 478 F. Supp. 2d 643, 648 n.8 (D. Del. 2007) (citing Rann v. Chao, 346 F.3d 192, 194-195 (D.C. Cir. 2003)); see also 29 C.F.R. § 1614.201(a) (noting the special procedure under the ADEA). For purposes of the pending motion, and this action generally, the distinction proves immaterial, because Plaintiff's Complaint makes plain that she only initiated a single civil action, the present one, and never notified the EEOC of an intention to forego the administrative remedy process relative to her claim of age discrimination (much less file an independent action within the necessary timeframe).

v. U.S. Postal Serv., No. 12-5467, 2013 WL 5467169, at *8-*10 (dismissing RA and ADEA claims for failure to exhaust); Cross v. Donahoe, 12-2670, 2013 WL 4518049, at *4 (D.N.J. Aug. 23, 2013) (dismissing Title VII claims for failure to exhaust).

The exhaustion requirements applicable in this instance generally required "both consultation with an agency counsel" and the filing an EEO complaint and subsequent federal complaint "within the required times." Robinson v. Dalton, 107 F.3d 1018, 1020 (3d Cir. 1997). Specifically, Plaintiff had to obtain a final agency decision, appeal that decision through conclusion to the EEOC, and then institute a civil action in an appropriate federal district court within **ninety (90) days** of the relevant decision (or 180 days from the occurrence of the alleged unlawful practice, if foregoing the administrative process in connection with an ADEA claim). See, e.g., 42 U.S.C. § 2000e-16(c). These deadlines, in turn, function as a statute of limitations, and once expired, generally bar a plaintiff from seeking judicial review. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 95 (1990); Winder v. Postmaster Gen. of U.S., 528 F. App'x 253, 255 (3d Cir. 2013) (noting that the failure to bring a claim within the EEO limitations period generally bars relief); Hill v. U.S. Gen. Servs. Admin., No. 05-2092, 2008 WL 4371761, at *4 (D.N.J. Sept. 17, 2008) (barring untimely EEO complaints).

Here, Plaintiff's Complaint delineates a long history of EEO activity from 2005 to 2009, but alleges full administrative exhaustion and the timely filing of a federal action only in relation to her Title VII claim for retaliatory discipline in the fall of 2009.  Indeed, the voluminous pleading filed by Plaintiff reflects a litany of EEO activity, but provides no facts to show the requisite exhaustion of administrative remedies as to her claims of workplace discrimination and/or retaliation in 2006 to 2008, nor her EEO claims subsequent to the 2009 claim for retaliation.  (See generally Compl.)

Indeed, although Plaintiff relies upon allegations of job-related discrimination and/or retaliation dating back as early as November 2005, her own pleading reflects that she did not even initiate her first EEO proceeding until 2007.  Similarly, Plaintiff pursued multiple EEO complaints in 2007, but did not pursue them to final agency decision (despite receiving instructions on the appropriate process), and then voluntarily withdrew a subsequent EEO complaint in 2008.  These claims have, accordingly, not been exhausted, and the time for such exhaustion has long since expired.[17]  See 42 U.S.C. § 2000e-

---

[17] Moreover, even if the Complaint and attached documents contained facts sufficient to demonstrate exhaustion, which it does not, the period within which to initiate a civil action relative to these claims similarly expired long ago.  And, for the reasons stated below, Plaintiff has not demonstrated an

5(e)(1) (providing, in relevant part, that a claim of

discrimination must be filed within three hundred (300) days

after the allegedly unlawful employment practice occurred);

Amtrak v. Morgan, 536 U.S. 101, 108-09 (2002) (noting that a

"claim is time barred if it is not filed within [this] time

limit").  Similarly, although Plaintiff fully exhausted her 2007

claims under Title VII, the RA, and the ADEA on August 13, 2007

(following reconsideration), she never initiated a civil action

within the required ninety (90) period, and her opportunity to

file such an action lapsed over seven (7) years ago.[18]  See Hill,

---

entitlement to any of the equitable exceptions to these time
limits.  See 29 C.F.R. § 1614.604(c).
[18] These time limits may be excused on the grounds of waiver,
estoppel, and/or equitable tolling.  See 29 C.F.R. §
1614.604(c). Here, Plaintiff does not argue for application of
any of these equitable exceptions, nor do her submissions
otherwise reflect even an arguable entitlement to any particular
one of them.  Nevertheless, the Court notes that equitable
tolling generally applies (1) where the defendant has actively
misled the plaintiff relative to the cause of action; (2) where
the plaintiff has been prevented from asserting his or her
rights in some extraordinary way; and/or (3) where the plaintiff
timely asserted a claim, but did so, mistakenly, in an improper
forum.  See Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d
1380, 1387 (3d Cir. 1994); see also 29 C.F.R. § 1614.105(a)(2).
Plaintiff has alleged no such qualifying circumstances in this
instance. To the contrary, Plaintiff's own pleading reflects, on
its face, that the Postal Service consistently advised her of
her rights, and her filing of eight (8) independent EEO
proceedings demonstrates her acute familiarity with the
administrative process. Even more, in her Sur-reply, Plaintiff
concedes that the present suit only concerns the retaliation
claims she "brought forth" in the fall of 2009. (Pl.'s Sur-reply
at 1.) For all of these reasons, the Court finds no basis for
equitable tolling.

2008 WL 4371761, at *5 (dismissing the plaintiff's employment claims on exhaustion and timeliness grounds).

The Court, however, reaches a different result in relation to Plaintiff's December 5, 2009 EEO complaint for retaliation in violation of Title VII (but not the RA and/or ADEA), following the Postal Service's issuance of a Notice of Removal on October 20, 2009. (See, e.g., Ex. 55 to Compl.) Indeed, the Postal Service concedes that Plaintiff fully exhausted this EEO complaint and timely filed this action as to this Title VII retaliation claim following the EEOC's December 13, 2013 final decision. (See generally Ex. 58 to Compl.) This EEO complaint narrowly concerns conduct that occurred on August 24, 2009, October 5, 2009, and October 20, 2009, and in turn, sets the contours of what survives for purposes of this litigation.

For all of these reasons, Count IX, a claim for retaliation in violation of Title VII, will be permitted to proceed. However, Counts I and X, claims for a hostile work environment in violation of Title VII, the RA, and the ADEA, must be dismissed with prejudice.

### B. Plaintiff's Claim for "Ultra Vires Conduct," Embodied in Count II, Must be Dismissed with Prejudice

In Count II of her Complaint, Plaintiff alleges that the Postal Service engaged in "ultra vires conduct" that violated the Privacy Act, 5 U.S.C. § 552a, and the Health Insurance

Portability and Accountability Act of 1996, Pub. L. No. 104-191, 110 Stat. 1936 (hereinafter, "HIPAA"), by "disclosing Plaintiff's protected health information" without her knowledge or consent.  (Compl. at 5.)

The Privacy Act aims "'to protect the privacy of individuals identified in government information systems by regulating the collection, maintenance, use and dissemination of personal information and prohibiting unnecessary and excessive exchange of such information within the government to outside individuals.'" N'Jai v. Pittsburgh v. Bd. of Public Educ., 487 F. App'x 735, 737 (3d Cir. 2012).  The Act, in turn, creates a private cause of action when a federal agency "fails to comply with any provision of this section ... in such a way as to have an adverse [e]ffect on an individual."  5 U.S.C. § 552a(g)(1)(D).  Critically, however, an action to enforce any liability created under the Privacy Act must be filed within two years from the date of the allegedly unlawful disclosure.  See 5 U.S.C. § 552a(g)(5).

Here, Plaintiff's Complaint contains no information from which to divine the basis for her Privacy Act claim, much less any identification of the improperly disclosed record.[19]

_____

[19] In order to state a viable claim for improper disclosure, a plaintiff must allege: (1) that the disclosed information amounts to a statutorily-defined record; (2) that the agency improperly disclosed the information; (3) that the disclosure

Nevertheless, even if the Postal Service disclosed Plaintiff's record on the date of her resignation, September 10, 2010, the limitations period applicable to her Privacy Act claim has long since expired.  The Court therefore finds Plaintiff's Privacy Act claim untimely.[20]  See Campeau, 575 F. App'x at 38 (affirming the dismissal of a Privacy Act claim on timeliness grounds).

As a result, Count II must be dismissed with prejudice.[21]

### C. Plaintiff's Constitutional Claims, Embodied in Counts III, IV, VII, and VIII, Must be Dismissed with Prejudice

Plaintiff's Complaint, as stated above, contains a bevy of constitutional claims, all stemming from her allegations of workplace discrimination and/or retaliation.  (See generally Compl.)  Counts III, IV, VII, and VIII specifically claim that

---

had an adverse effect; and (4) that the agency willfully and intentionally disclosed the record.  See, e.g., Quinn v. Stone, 978 F.2d 126, 131 (3d Cir. 1992); Madden v. Runyon, 899 F. Supp. 217, 225 (E.D. Pa. 1995).  Plaintiff's Complaint in this instance contains no such allegation.  For that reason, Plaintiff's claim under the Privacy Act could, alternatively, be dismissed for failure to state a claim.

[20] For the reasons stated above, no allegations of Plaintiff's Complaint suggest any entitlement to equitable tolling, nor has Plaintiff argued for the applicability of such exception.  Much to the contrary, Plaintiff has, as stated herein, in essence conceded that her Complaint solely concerns acts of retaliation in the Fall of 2009.  (See Pl.'s Sur-reply at 1.)

[21] As to that aspect of Count II that pertains to HIPAA, the Court need only briefly note that HIPAA creates "no private federal remedy."  Newsuan v. Colon, No. 13-1199, 2013 WL 3989076, at *3 (E.D. Pa. Aug. 5, 2013) (collecting cases); Hove v. Cleary, No. 10-1876, 2011 WL 2223760, at *6 (D.N.J. June 6, 2011) (same).  HIPAA therefore provides Plaintiff with no independent avenue for relief, and this aspect of Count II must likewise be dismissed with prejudice.

the Postal Service acted with "discriminatory animus" and/or singled her out for "irrational differential treatment [and] retaliatory conduct," in violation of her constitutional rights under the First and Fourth Amendments, and the Equal Protection Clause of the Constitution.  (See Compl. at 6, 8-9,

Nevertheless, in a variety of contexts squarely applicable here, the Supreme Court has concluded "that a precisely drawn, detailed statute pre-empts more general remedies." Brown v. Gen. Servs. Admin., 428 U.S. 820, 835 (1967).  Indeed, extant authority reflects that Title VII, the ADEA, and the Rehabilitation Act provide the exclusive remedy for claims of discrimination and/or retaliation in federal employment, and foreclose a federal employee plaintiff from asserting parallel constitutional claims.  See, e.g., Brown, 425 U.S. 835 (finding that Title VII "of the Civil Rights Act of 1964, as amended, provides the exclusive judicial remedy for claims of discrimination in federal employment"); Hildebrand v. Allegheny Cnty., 757 F.3d 99, 110 (3d Cir. 2014) (finding that the ADEA provides the "exclusive remedy for claims of age discrimination in employment," precluding claims of unconstitutional age discrimination in the workplace); Ruddy v. U.S. Postal Serv., 455 F. App'x 279, 284 (3d Cir. 2011) (finding that the RA constitutes "the exclusive means" for asserting disability discrimination claims that arise from federal employment).

Indeed, because of the administrative schemes codified in those statute (and in the regulations promulgated thereunder), "it would be anomalous to permit a litigant to avoid [those] remedial scheme[s] by simply asserting an independent constitutional claim premised upon the same facts." Spence v. Straw, 54 F.3d 196, 203 (3d Cir. 1995).

Because Plaintiff's constitutional claims solely arise out of her allegations of workplace discrimination and/or retaliation, the Court finds these claims barred. See Fullman v. Potter, 480 F. Supp. 2d 782, 794 (E.D. Pa. 2007) (finding the plaintiff's constitutional claims barred, because they arose out of alleged discrimination related to an individual's federal employment); Allen v. Crosby, 416 F. Supp. 1092, 1098 (E.D. Pa. 1976) (dismissing the plaintiff's employment-related claims under 42 U.S.C. § 1981, and the Fifth and Thirteenth Amendments); Hersh v. Dep't of Navy, 456 F. Supp. 227, 229 (E.D. Pa. 1978) (dismissing the plaintiff's employment-related claims under 42 U.S.C. §§ 1981, 1983, as well as the First, Fourth, and Fifth Amendments); Harley v. Paulson, No. 07-3559, 2008 U.S. Dist. LEXIS 112607, at *6 n.1 (D.N.J. Dec. 9, 2008) (dismissing a First Amendment retaliation claim, on the grounds that Title VII provided the exclusive remedy for federal employees' claims of employment discrimination).

As a result, Counts III, IV, VII, and VII must be dismissed with prejudice.

### D. Plaintiff's Claim for Mail Fraud, Embodied in Count V, Must be Dismissed with Prejudice

In Count V of her Complaint, Plaintiff alleges that Defendants acted in violation of 18 U.S.C. § 1341, a statute directed at criminal liability for mail fraud.[22] (See Compl. at 7.)

Nevertheless, the federal criminal laws do not provide private individuals with any cause of action. Indeed, "there is no private cause of action for a violation of the federal mail and wire fraud statutes." Addlespurger v. Corbett, 461 F. App'x 82, 87 (3d Cir. 2012); Jones v. TD Bank, 468 F. App'x. 93 (3d Cir. 2012) (finding that the federal mail fraud statute did not provide plaintiff with private right of action); Wisdom v. First Midwest Bank, 167 F.3d 402, 408 (8th Cir. 1999) (joining the Fifth and Sixth Circuits in finding no private cause of action for mail fraud).

As a result, Count V must also be dismissed with prejudice.

### E. Plaintiff's Claim for ADA and FMLA violations, Embodied in Count VI, Must be Dismissed with Prejudice

Count VI of Plaintiff's Complaint alleges that the Postal Service violated the Americans with Disabilities Act, 42 U.S.C.

---

[22] Plaintiff's Complaint itself provides no information from which to divine the perceived basis for her mail fraud claim. (See Compl. at 7.)

§ 12101, et seq. (hereinafter, the "ADA"),[23] and the Family
Medical Leave Act, 29 U.S.C. § 2601, et seq. (hereinafter, the
"FMLA").[24]

Nevertheless, the Court need not belabor Plaintiff's ADA
claim, because the ADA does not apply to the federal government
employers, as here, and therefore provides Plaintiff no basis
for relief.  See Smith v. Pallman, 420 F. App'x 208, 214 (3d
Cir. 2011) (finding dismissal of the plaintiff's ADA claim
"proper because the ADA does not apply to federal agencies");
Venter v. Potter, 435 F. App'x 92, 95 n. 1 (3d Cir. 2011)
(same).

Likewise, Plaintiff's claim for violations of the FMLA is
untimely and must be dismissed.  Indeed, an FMLA claim must be
brought no later than two (2) years after "the last event" of
the alleged violation.[25]  29 U.S.C. § 2617(c)(1); see also
Scheidt, 2014 WL 6991982, at *4 (citing White v. Eberle & BCI
Servs., LLC, No. 12-2169, 2013 WL 211249, at *3 (D.N.J. Jan. 17,

---

[23] The ADA generally prohibits discrimination by employers
against qualified individuals with disabilities.  See 42 U.S.C.
§ 12112.
[24] The FMLA generally entitles government employees to a total of
12 administrative workweeks of leave during any 12-month period
under certain specified circumstances.  See 29 U.S.C. §
2612(a)(1); 5 U.S.C. § 6382(a)(1).
[25] In the event of a "willful" violation of the FMLA, the statute
of limitations extends to three (3) years.  29 U.S.C. §
2617(c)(2).  Plaintiff, however, has demonstrated no such
willfulness, and even if she had, her FMLA claim would still be
untimely, as explained below.

2013)) (noting same).  Here, the last event Plaintiff alleges

violated the FMLA occurred on July 7, 2010, after the Postal

Service denied Plaintiff's request for FMLA benefits.  (See

Compl. at 23 ¶ 50.)  Plaintiff, however, did not file her

Complaint in this litigation until March 12, 2014, over three

and a half years later.  Moreover, even assuming the last

discriminatory event occurred on the date of Plaintiff's

resignation, September 10, 2010, she still filed the Complaint

well beyond the two (2) year limitations period (and even the

three (3) year limitations period applicable to willful

violations).[26]  The Court therefore finds Plaintiff's FMLA claim

untimely.  See Scheidt, 2014 WL 6991982, at *4 (dismissing an

FMLA claim as untimely); Mumford v. Peco Energy Co., No. 02-929,

2002 WL 818858, at *2 (E.D. Pa. Apr. 29, 2002) (dismissing an

FMLA claim as time-barred).

    As a result, Count VI must be dismissed with prejudice.

**V.  CONCLUSION**

    For all of these reasons, the Postal Service's motion to

dismiss will be granted, and Plaintiff's Complaint will be

dismissed in its entirety with prejudice, except for Count IX,

---

[26] Nor does the pendency of her EEOC charge change this result.
Indeed, the "'filing of a charge of discrimination with the EEOC
or comparable state agency does not toll the FMLA statute of
limitations.'"  Scheidt, 2014 WL 6991982, at *5 (quoting Durham
v. Atl. City Elec. Co., No. 08-1120, 2010 WL 3906673, at *9
(D.N.J. Sept. 28, 2010)).

which states a Title VII claim for retaliatory discipline in the fall of 2009.  An accompanying Order will be entered.


**September 23, 2015**                            **s/ Jerome B. Simandle**
Date                                                  JEROME B. SIMANDLE
                                                    Chief U.S. District Judge