IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARY-ELLEN MARLEY,<br><br>    Plaintiff,<br><br>  v.<br><br>PATRICK R. DONAHUE, *POSTMASTER GENERAL OF THE UNITED STATES POSTAL SERVICE*,<br><br>    Defendant. | HONORABLE JEROME B. SIMANDLE<br><br>Civil Action<br>Civil No. 14-1597 (JBS/JS)<br><br>**OPINION** |

APPEARANCES:

Mary-Ellen Marley, <u>pro</u> <u>se</u>
1100 Bay Ave.
Ocean City, NJ 08226

Anne B. Taylor, Assistant U.S. Attorney
U.S. ATTORNEY'S OFFICE
401 Market Street
P.O. Box 2098
Camden, NJ 08101
 Attorney for Defendant

**SIMANDLE, Chief Judge:**

## I. INTRODUCTION

In this employment discrimination litigation, <u>pro</u> <u>se</u> Plaintiff Mary-Ellen Marley (hereinafter, "Plaintiff"), alleges that her longtime former federal employer, the United States Postal Service, engaged in a series of retaliatory conduct during the fall of 2009, leading to her eventual termination. The remaining Defendant, Patrick R. Donahue, Postmaster General of the United States Postal Service (hereinafter, "Defendant"),

moves for summary judgment on Plaintiff's sole remaining claim

of Title VII retaliation based on three separate incidents in

the fall of 2009.  The principal issue to be decided is whether

Plaintiff has adduced evidence from which a reasonable

factfinder could find that the Postal Service retaliated against

her due to her filing of an EEO Complaint on August 24, 2009.

For the reasons that follow, Defendant's motion for summary

judgment will be granted.

## II.  BACKGROUND

### A.  Factual Background[1]

Plaintiff joined the United States Postal Service in

November 1980 as a temporary worker, and became a regular

---

[1] Unless identified otherwise, the following facts are taken from
Defendant's Rule 56.1 Statement of Material Facts.  The Court
notes that Plaintiff has not submitted a L. Civ. R. 56.1
Counterstatement of Facts.  However, given that Plaintiff is
proceeding pro se, the Court applies a rule of leniency and will
draw relevant facts from the record, including Plaintiff's
deposition testimony. See, e.g., Oguguo v. Wells Fargo Bank,
N.A., No. 14-2383, 2016 WL 3041853, at *1 n.3 (D.N.J. May 27,
2016)(explaining that district court judges often relax
procedural rules for an unrepresented litigant); Athill v.
Speziale, No. 06-4941, 2009 WL 1874194, at *2 (D.N.J. June 30,
2009)(citations omitted)("Where a nonmoving pro se litigant
fails to file a responsive Local Civil Rule 56.1 statement of
undisputed material facts, a court may draw the relevant facts
underlying the claims from available sources such as the
complaint, deposition testimony, the moving litigant's Local
Civil Rule 56.1 statement of undisputed material facts and
supporting exhibits.").  As a result, the Court will take the
allegations in Defendant's Statement that have evidentiary
support as admitted unless the Court can reasonably identify a
material counter-fact from the available sources.

employee in 1985. (Marley Dep. 25:6-20.) From 1982 until her termination in 2010, she worked at the post office in Sewell, New Jersey. (Id. at 27:4-9.)

In January 2007, Plaintiff began filing complaints with the USPS's Office of Equal Employment Opportunity ("EEO"). (Def. SMF ¶ 8.) Two of Plaintiff's EEO actions, Complaint Nos. 4C-080-0080-07 and 4C-080-0024-08, were informal complaints that were resolved on October 16, 2007 and March 31, 2008, respectively. (Id. at ¶ 9.) In Complaint No. 4C-080-0029-07, Plaintiff challenged the denial of her application for workers' compensation benefits, and that was subsequently dismissed for failure to state a claim. (Id. at ¶¶ 10-11.) In Complaint No. 4C-080-0065-08, Plaintiff complained that Supervisor Sharon White ("hereinafter, Ms. White") discriminated on the bases of sex, age and disability, and retaliated against her, when Ms. White sent Plaintiff home and charged her Leave Without Pay on May 1, 2008, but the Final Agency Decision found no discrimination. (Id. at ¶¶ 12-13.) Then, on January 20, 2009, in Complaint No. 4C-080-0015-09, Plaintiff challenged a Notice of Removal issued in December 2008 and attributed to Supervisor Edwin Schofield (hereinafter, "Mr. Schofield") and Postmaster Evelyn Hunley (hereinafter, "Postmaster Hunley"). (Id. at ¶ 14.) Plaintiff contended that Mr. Schofield was directed by Postmaster Hunley to lodge progressive discipline against

3

Plaintiff because Plaintiff had previously reported the Postmaster for wrongdoing. (Id. at ¶¶ 15, 76.) Plaintiff further contended that Postmaster Hunley was trying to get rid of her because she reported Postmaster Hunley's misuse of USPS resources to upper management. (Id. at ¶ 16.) This EEO complaint was dismissed as moot in April 2009 because she did not request any compensatory damages. (Id. at ¶ 17, Ex. G to Def. Br.)

Then, in February 2009, Plaintiff filed a grievance after Mr. Schofield had police escort her the building after an argument between Plaintiff and Mr. Schofield. (Def. SMF at ¶¶ 18-19; Marley Dep. at 44:13-22.) This associated grievance was resolved in April 2009, and did not involve allegations of discrimination. (Id. at ¶ 19.)

Plaintiff was on leave from February until April 17, 2009, was reassigned to the nearby Deptford Post Office in May, and returned to the Sewell Post Office in June 2009. (Marley Dep. at 46:20-25.) Plaintiff did not receive any new discipline in June, July, or August 2009 before the August 24, 2009 incident. (Id. at 47:1-12; Def. SMF at ¶ 20.)

### 1. August 24, 2009 Incident with Mr. Schofield

On August 24, 2009, Plaintiff explains that as she was turning with a tray of mail in her hands preparing it for loading and delivery, Mr. Schofield and Ms. White approached her

waving her Form 3396, relating to overtime. (Def. SMF at ¶ 25;
Opp'n at 4.)  Mr. Schofield stated that he approached Plaintiff
because of her late request for a substantial amount of
assistance to deliver her mail that day. (Def. SMF at ¶¶ 27, 31-
32.)  He believed that her request for overtime assistance was
unreasonable based on a computer program called DOIS. (Id. at ¶¶
30, 34.)  As Plaintiff bent to put her tray down, Mr. Schofield
"deliberatively moved" her cart, "cocked his leg" on her
equipment, claiming that Plaintiff was unreasonable in her
overtime hours she submitted. (Ex. K to Def. Br.; Opp'n at 4.)
Plaintiff replied, "[g]et your crotch out of my face!" (Opp'n at
4.)  Mr. Schofield then stated, "Mary there is no room for you
in my post office. Clock out and go home." (Ex. 9 to Opp'n.)
Mr. Schofield stated that he rested his foot on the cart and
tried to get Plaintiff's attention by calling her name several
times, and that he had stood this way previously. (Def. SMF at ¶
36.)  He denies that he placed his "crotch" in Plaintiff's face,
and thought her behavior was insubordinate, inappropriate, and
disrespectful. (Id. at ¶¶ 38-39.)  Plaintiff filled out a notice
of absence, left, and called the EEO hotline. (Opp'n at 4.)

On August 28, 2009, Plaintiff wrote a letter via certified
mail to Postmaster Hunley in which she informed Postmaster
Hunley that she had filed an EEO complaint against her and Mr.
Schofield, and she copied Ms. White. (Def. SMF ¶ 21; Ex. AA to

Def. Br.)  Postmaster Hunley refused receipt of the letter,
which was returned to Plaintiff in its unopened envelope. (Def.
SMF ¶ 22; Marley Dep. at 38:14 to 39:12.)

### 2. October 5, 2009 Incident with Postmaster Hunley

Then, on October 5, 2009, Plaintiff requested information
about workloads and assistance from Postmaster Hunley. (Def. SMF
¶ 40.)  Plaintiff challenged management's decision on the time
allotted for her to deliver the mail on her route, specifically
because three other carriers had been approved for extra time.
(Id. at ¶ 41; Ex. 11 to Opp'n.)  Plaintiff first approached Ms.
White and then Postmaster Hunley, and Postmaster Hunley
instructed Ms. White that the information request had to be
handled either by Ms. White or by a union steward. (Id. at ¶¶
42-43; Ex. 11 to Opp'n.)  However, Plaintiff interrupted this
conversation and insisted that Postmaster Hunley, not Ms. White,
had to provide the information. (Id. at ¶¶ 44-45.)  After a
"little screaming match," Postmaster Hunley told Plaintiff to
leave the building immediately, but Plaintiff returned shortly
thereafter. (Id. at ¶¶ 46-47.)  Postmaster Hunley stated that
Plaintiff leaned over her desk in a threating manner, only
leaving after Postmaster Hunley threatened to call the police.
(Id. at ¶ 55; Ex. 11 to Opp'n.)  As a result of Plaintiff's
behavior, Ms. White submitted a request for removal, which,
because of Plaintiff's disciplinary history, was the next step

of discipline for her. (<u>Id.</u> at ¶ 51.)[2] Postmaster Hunley automatically put her on "emergency placement" without pay because she had been put out of the building, which meant that Plaintiff could not return to work and was not being paid. (<u>Id.</u> at ¶¶ 52-53.) Plaintiff believes that Postmaster Hunley's decision to send her home was in retaliation for prior EEOC filings because "she said she was sick of me, and . . . my complaints," specifically, the assignments of time and volume for the different routes. (Marley Dep. at 111:11-24.)

Postmaster Hunley's basis for the off-duty placement was that Plaintiff had a "screaming tirade" on the workroom floor, threw a piece of paper on Postmaster Hunley's desk, screamed at the Postmaster, ignored several instructions to leave the building, and slammed her hand on the Postmaster's desk. (Def. SMF at ¶ 54.) Plaintiff filed a grievance regarding her emergency placement in an off-duty status without pay, and she won the grievance on December 22, 2009, as the arbitrators found evidence that Plaintiff and Postmaster Hunley were having an argument, but that there was no conflicting evidence whether Plaintiff was injurious to herself or others such that the arbitrators concluded that the discipline was too harsh. (<u>Id.</u> at

---

[2] When asked if she ever heard Ms. White say anything specifically about trying to get back at her for Plaintiff's earlier EEO cases, Plaintiff replied, "No. Sharon's not like that." (Marley Dep. 113:22-25.)

¶¶ 56-57.)  Plaintiff subsequently returned to duty and was
compensated for her missed time. (Id. at ¶ 58.)

### 3. October 20, 2009 Notice of Removal

Finally, on October 20, 2009, Plaintiff was served with a
Notice of Removal, authored by Ms. White, based on specifically-
identified defects with Plaintiff's work during the month of
September 2009 as well as the October 5, 2009 dispute with
Postmaster Hunley. (Id. at ¶ 59.)  The Postal Service issued
Plaintiff this Notice for "Improper Conduct" and "Unsatisfactory
Job Performance." (Ex. T to Def. Br.)  The "Improper Conduct"
section documents the October 5, 2009 incident previously
described, and adds that Plaintiff was "screaming," "yelling"
and "poked [her] finger at the Postmaster," leading her to feel
"threatened." (Ex. 11 to Opp'n.)  Plaintiff denies poking
Postmaster Hunley, and claims that she was "very cautious" of
Postmaster Hunley because "it has been some time now that she
has been trying to make me look like a threat." (Id.)  The
"Unsatisfactory Job Performance" section of the Notice of
Removal detailed three days that Plaintiff failed to return to
the office in the time allotted prior to her departure and which
then resulted in unauthorized overtime. (Def. SMF at ¶ 60.)
These included (1) September 9, 2009, when Plaintiff generated
over an hour of unauthorized overtime, (2) September 10, 2009,
when Plaintiff generated two hours of unauthorized overtime, and

(3) September 21, 2009, when Plaintiff failed to alert management of any need for assistance and subsequently generated over an hour of unauthorized overtime. (Id. at ¶¶ 61-65.) For failing to follow the instruction of her supervisors about her time requirements and by getting into verbal altercations with them, Plaintiff was charged with violating the requirements of the USPS Standards of Conduct, ELM Section 665.16, Behavior and Personal Habits, as well as the M-41, the City Carriers Duties & Responsibilities, which charges carriers with the responsibilities of obeying the instructions of management and delivering mail in the time allotted. (Id. at ¶ 68.) Plaintiff's past record was also considered, including the various warnings and suspensions she had previously received since July 2008. (Ex. 11 to Opp'n.) Plaintiff disputes the claims of unsatisfactory job performance, as she claims there is "no evidence of poor job," supervisors unnecessarily observing her performance, and Mr. Schofield adding 67 additional walking stops to her route in August 2009. (Id.; Ex. 19 to Pl. Sur-Reply.)

Plaintiff's Notice of Removal was stayed pending the arbitration process, but the matter was settled by Management and Labor ahead of arbitration in April 2010. (Id. at ¶ 69; Ex. 26 to Pl. Sur-Reply.) Plaintiff returned to duty on April 12, 2010, but Plaintiff eventually resigned from the Postal Service

on September 10, 2010, because she asserted that she could no longer tolerate management's "behavior" towards her. (Ex. 24 to Compl.; Marley Dep. at 25:25.)

Meanwhile, the investigation and review of Plaintiff's EEO Complaint concerning the October 20, 2009 Notice of Removal (alleging discrimination based upon retaliation) continued, and following a lengthy investigative process, the Administrative Judge conducted a hearing on April 26-27, 2012. (Ex. I to Def. Br.) Plaintiff testified at the hearing that she believed all of the events at issue in this lawsuit derived from Postmaster Hunley's anger at allegedly being the target of an internal investigation in 2004 because of Plaintiff's reporting of her activities. (Def. SMF at ¶ 78.) Plaintiff also testified that, "[b]asically I was targeted to the extent that they were accusing me of being loud, belligerent. I was belligerent, because I disagreed with the figures that they were putting in." (Id. at ¶ 80.) Based upon the "hearing and the evidence adduced," however, the Administrative Judge found that the Postal Service "did not discriminate" against Plaintiff on the basis of reprisal. (Ex. I to Def. Br.) Rather, the Administrative Judge determined that the Postal Service disciplined Plaintiff on account of her "flagrant and repeated violations of postal policy and regulations pertaining to behavior and performance" and entered judgment in favor of the

Postal Service on November 5, 2012. (See Ex. 47 to Compl.)
Plaintiff took a timely appeal from that "Final Agency Decision"
(see Exs. 48–53 to Compl.), but the EEOC found "no reason to
disturb the final action," and affirmed the Administrative
Judge's final agency decision on June 4, 2013. (Ex. 55 to
Compl.)  The EEOC then denied her request for reconsideration on
December 13, 2013, and advised her of the right "to file a civil
appropriate in an appropriate United States District Court
**within ninety (90) calendar days"** from the denial. (Ex. 58 to
Compl.) (emphasis in original)

**B. Procedural Background**

Plaintiff timely filed a 10-count Complaint in this Court,
alleging that the Post Office: (1) subjected her to a hostile
and abusive work environment in violation of Title VII, the
Rehabilitation Act, and the Age Discrimination in Employment
Act; (2) engaged in ultra vires conduct; (3) violated her
constitutional right to privacy; (4) infringed upon her Fourth
Amendment Rights in violation of 42 U.S.C. § 1983; (5) committed
mail fraud in violation of 18 U.S.C. § 1341; (6) violated the
Family Medical Leave Act and the Americans with Disabilities
Act; (7) infringed upon her First Amendment rights in violation
of 42 U.S.C. § 1983; (8) violated the Equal Protection Clause;
(9) subjected her to reprisal in retaliation for engaging in
protected activities; and (10) violated the Rehabilitation Act.

[Docket Item 1.]  This Court dismissed all Counts of Plaintiff's Complaint in their entirety with prejudice, except for Count IX, a Title VII claim for retaliation arising out of actions taken and discipline imposed by the Postal Service in the late summer and fall of 2009. See generally Marley v. Donahue, 133 F. Supp. 3d 706 (D.N.J. 2015).  The Court also dismissed the United States Postal Service from the action because the head of the Postal Service, Patrick R. Donahue, amounts to the only cognizable defendant. See id. at 709 n.2; 42 U.S.C. § 2000e-16(c).  Plaintiff then filed an Amended Complaint, repeating her claim for Title VII retaliation, limiting her allegations to conduct in the fall of 2009, as well as naming the proper Defendant, Patrick R. Donahue. [Docket Item 29.]  After factual discovery, Defendant moved for summary judgment on the remaining retaliation claim.  Plaintiff timely filed her opposition and also submitted a sur-reply.[3]

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the

---

[3] Plaintiff did not seek the Court's leave to file a sur-reply, as she is required to do under Local Rule 7.1(d)(6). Nonetheless, given that Plaintiff is proceeding pro se, the Court will consider the submission. See Paris v. Pennsauken School Dist., No. 12-7355, 2013 WL 4047638, at *1 n.3 (D.N.J. Aug. 9, 2013)(considering a sur-reply because "[p]laintiffs are pro se litigants who may be unfamiliar with the law and motions practice before this Court").

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law. Id. Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. The Court will view any evidence in favor of the nonmoving party, here the Plaintiff, and extend any reasonable favorable inferences to be drawn from that evidence to that party. Scott v. Harris, 550 U.S. 372, 378 (2007). If the Plaintiff as the nonmoving party fails to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof, the moving party is entitled to judgment as a matter of law. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

**IV. DISCUSSION**

Defendant argues that summary judgment should be granted in his favor because Plaintiff cannot establish her prima facie case of retaliation since she has not produced evidence that the three disciplinary actions on August 24, 2009, October 5, 2009, and October 20, 2009 were causally connected to her protected activities, and even if she could establish her prima facie case, Defendant had a legitimate, nondiscriminatory reason for

its actions: Plaintiff's own behavior at work.  Plaintiff responds that she was singled out by her supervisors because she had previously filed several EEO complaints, and moreover, that she was unfairly disciplined for failing to adhere to USPS overtime policies.

Title VII prohibits retaliation by making it unlawful for employers to discriminate against "any individual . . . because he has opposed any . . . unlawful employment practice" or because that individual has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing." 42 U.S.C. § 2000e-3(a). "[Title VII's] retaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 67 (2006).

To state a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action. Carvalho-Grevious v. Delaware State Univ., 851 F.3d 249, 257 (3d Cir. 2017)(quoting Moore v. City of Phila., 461 F.3d 331, 340-41 (3d Cir. 2006)).  A plaintiff seeking to prove her case through indirect evidence, as Plaintiff seeks to here, may do so by applying the familiar McDonnell Douglas burden-shifting framework. Daniels v. Sch.

<u>Dist. of Phila.</u>, 776 F.3d 181, 192 (3d Cir. 2015).  After establishing a <u>prima</u> <u>facie</u> case of retaliation, the burden of production shifts to the employer to provide a legitimate non-retaliatory reason for its conduct. <u>Moore</u>, 461 F.3d at 342. If it does so, the burden shifts back to the plaintiff "to convince the factfinder both that the employer's proffered explanation was false [that is, a pretext], and that retaliation was the real reason for the adverse employment action." <u>Id.</u>  The onus is on the plaintiff to establish causation at two stages of the case: initially, to demonstrate a causal connection as part of the prima facie case, and at the final stage of the <u>McDonnell Douglas</u> framework to satisfy her ultimate burden of persuasion by proving pretext. <u>Carvalho-Grevious</u>, 851 F.3d at 257.

### A. <u>**Prima Facie**</u> **Case of Retaliation**

It is undisputed that Plaintiff has established the first two elements in a Title VII <u>prima</u> <u>facie</u> retaliation case. Specifically, she filed several complaints with the EEOC in February and August 2009, and suffered adverse employment actions when she was sent home on August 24, 2009, suspended without pay on October 5, 2009, and given a Notice of Removal on October 20, 2009.  Defendant, however, argues that Plaintiff cannot establish the <u>prima</u> <u>facie</u> element of causation for any of the three alleged retaliatory disciplines, as the adverse

actions had nothing to do with Plaintiff's protected activities.
(Def. Br. at 12.)

Regarding causation, the court considers whether a
reasonable jury could link the employer's conduct to retaliatory
animus. See Moore, 461 F.3d at 342 (citation omitted) ("the
ultimate question in any retaliation case is an intent to
retaliate vel non").  At the prima facie stage, Plaintiff must
provide evidence "sufficient to raise the inference that her
protected activity was the likely reason for the adverse
[employment] action." Carvalho-Grevious, 851 F.3d at 259.[4]  A
plaintiff may rely on a "broad array of evidence" to demonstrate
the causal link between the protected activity and the adverse
employment action taken. Id. at 260 (citations omitted).  To
meet her burden, she may proffer evidence of (1) temporal
proximity "unusually suggestive of retaliatory motive," (2) a
pattern of antagonism, or (3) her employer's inconsistent
explanation for taking an adverse employment action. Id.
(citations omitted).  However, "[t]hese are not the exclusive
ways to show causation, as the proffered evidence, looked at as

---

[4] The Third Circuit recently clarified in Carvalho-Grevious that
a plaintiff does not need to meet the higher "but-for" causation
standard at the prima facie stage; she must only do so at the
pretext stage of the analysis. See Carvalho-Grevious, 851 F.3d
at 258 ("[A] plaintiff alleging retaliation has a lesser causal
burden at the prima facie stage.").

a whole, may suffice to raise the inference." Id. (citations
omitted).

## 1. Temporal Proximity

Regarding temporal proximity, the Supreme Court has
indicated that "[t]he cases that accept mere temporal proximity
between an employer's knowledge of protected activity and an
adverse employment action as sufficient evidence of causality to
establish a prima facie case uniformly hold that the temporal
proximity must be very close." Clark Cnty. Sch. Dist. v.
Breeden, 532 U.S. 268, 273–74 (2001) (citations omitted); see
also LeBoon v. Lancaster Jewish Cmty. Ctr. Ass'n, 503 F.3d 217,
233 (3d Cir. 2007) ("Although there is no bright line rule as to
what constitutes unduly suggestive temporal proximity, a gap of
three months between the protected activity and the adverse
action, without more, cannot create an inference of causation
and defeat summary judgment."); C.M. v. Bd. of Educ., 128 F.
App'x 876, 883 (3d Cir. 2005) (finding that a three month gap
between protected activity and adverse employment action was too
broad to support causation); Williams v. Phila. Hous. Auth.
Police Dep't, 380 F.3d 751, 760-61 (3d Cir. 2004) (two month gap
did not support inference of causation).  Additionally, a
plaintiff must show that the temporal proximity of the protected
activity and the employment action is "unduly suggestive." Deans
v. Kennedy House, Inc., 587 F. App'x 731, 735 (3d Cir. 2014)

(citing Williams v. Phila. Hous. Auth. Police Dep't, 380 F.3d 751, 760 (3d Cir. 2004)) (finding that the plaintiff's termination more than two months after he filed his second EEOC charge not so close as to be unduly suggestive).  The Third Circuit has noted that "[t]he adverse action must occur within days, not months, of the protected activity." Mercer v. SEPTA, 608 F. App'x 60, 65 (3d Cir. 2015); see also Farrell v. Planters Lifesavers Co., 206 F.3d 271, 280 (3d Cir. 2000)(finding that "where temporal proximity is not so close as to be unduly suggestive," the "appropriate test is timing plus other evidence").

Here, the temporal proximity between Plaintiff's protected activities and the subsequent adverse employment actions are not unduly suggestive of retaliatory motive.  First, regarding the August 24, 2009 mail-tray incident with Mr. Schofield, Defendant argues that the three-to-four-month period of time between Plaintiff's last EEO activity involving Mr. Schofield in April 2009 (when the previous EEO complaint was found to be moot) and her being sent home on August 24 is insufficient to establish an inference of a causal connection between the two. (Def. Br. at 12.)  The Court agrees, as the period between April and August 2009 is not sufficiently close in time, especially since Plaintiff admits that she was subjected to no discipline in the intervening period. (Marley Dep. at 47:1-12.)  Regarding the

October 5, 2009 discipline with Postmaster Hunley, Defendant

argues that the six-week passage of time between her August 24,

2009 EEO complaint and the October 5, 2009 discipline is

insufficient, without more, to raise an inference of causal

connection between the two (Def. Br. at 14-15.) Additionally,

regarding Plaintiff's October 20, 2009 Notice of Removal,

Defendant points out that the record is undisputed that the

October 20, 2009 Notice of Removal, coming nearly two months

after Plaintiff's filing of an EEO Complaint on August 24, 2009,

itself followed three additional instances of Plaintiff ignoring

instructions of her manager and accruing unauthorized overtime

in the intervening month of September 2009. (Def. Br. at 15.)

Plaintiff has not introduced any evidence indicating anything

unduly suggestive of retaliatory motive following her EEO

complaints. Where the record discloses a continuing pattern of

workplace disputes before and after Plaintiff's protected EEO

activity, punctuated by the October 5, 2009 incident of

insubordination, the interval from August 24 to either October 5

or October 20 does not raise a temporal inference of causation

under these circumstances.[5]

---

[5] Moreover, against this background even the 16-day interval from
August 24 until September 9 (the first day of misconduct cited
in the October 20th Notice of Removal) does not raise an
inference of causation. See Abramson v. Wm. Paterson Coll. Of
N.J., 260 F.3d 265, 288 (3d Cir. 2001) (two weeks might not
establish an inference of causation). But the pertinent date of

## 2. Pattern of Antagonism

Although the "mere passage of time is not legally conclusive proof against retaliation," an intervening pattern of antagonism is typically needed when temporal proximity is lacking. See Robinson v. SEPTA, 982 F.2d 892, 894-95 (3d Cir. 1993); see also Woodson v. Scott Paper Co., 109 F.3d 913, 920-21 (3d Cir. 1997) ("[A] plaintiff can establish a link between his or her protected behavior and subsequent discharge if the employer engaged in a pattern of antagonism in the intervening period.")(emphasis added). In order to demonstrate a "pattern of antagonism," Plaintiff must put forth evidence such as a "constant barrage of written and verbal warnings . . . and disciplinary action[s] . . . soon after plaintiff's initial complaints.") Robinson v. Se. Pa. Transp. Auth., 982 F.2d 892, 895 (3d Cir. 1993). A pattern of antagonism, however, is more than a series of disciplinary actions; a plaintiff must "offer [a] basis for linking the disciplinary actions to her [protected activity]." Barton v. MHM Correctional Servs., Inc., 454 F. App'x 74, 79 (3d Cir. 2011) (citing Robinson, 982 F.2d at 896).

---

inquiry is the time when adverse action was taken against Plaintiff, and not the earliest date of post-EEO Complaint misconduct cited by the Postal Service in its disciplinary action, which did not occur until more than a month after the August 24th incident (and several more) had occurred.

Here, Plaintiff has not bolstered her causation argument by presenting additional evidence in conjunction with her timing argument or demonstrating a pattern of antagonism in the intervening period following her EEOC charges. See Blakney v. City of Philadelphia, 559 F. App'x 183, 186 (3d Cir. 2014). Plaintiff has certainly proffered a host of evidence evidencing a pattern of antagonism from Mr. Schofield, Ms. White, and Postmaster Hunley following Plaintiff's whistleblowing activity that alleged has occurred since 2004. (See, e.g., Opp'n at 3.) But the record does not indicate a pattern of antagonism between April 2009, when Plaintiff's EEO complaint against Mr. Schofield was dismissed as moot, and August 24, 2009, when Plaintiff filed her EEOC charge resulting from the mail-tray incident with Mr. Schofield. In fact, Plaintiff received no discipline during this time. (Marley Dep. at 47:1-12.) Nor does the record indicate any pattern of antagonism between October 5, the date of the office incident with Postmaster Hunley, and October 20, 2009, the date of Plaintiff's Notice of Removal. Regarding the period between August 24, 2009, when Plaintiff filed the EEO complaint, and October 5, 2009, however, Plaintiff takes issue with Defendant's calculation of overtime assistance on September 8-10 and September 21, 2009 and her resulting discipline, but she offers no evidence of a constant barrage of warnings. (Opp'n at 4-5.) The October 20, 2009 Notice of Removal documents her

late submissions of overtime forms and her late returns from her routes, while also explicitly laying out the USPS rules she violated. (Ex. T to Taylor Decl.) Moreover, in the January 19, 2010 Declaration of Impasse, the USPS Dispute Resolution Team explained that "[t]he use of PS Form 3996 and the authorization of overtime has been an ongoing dispute in this office as evidenced by the letter signed by all of the carriers in the office (U-50) and has been the subject of numerous grievances." (Ex. W to Def. Br.) Finally, Plaintiff offers no basis for linking the October 5th discipline to her August 24th EEOC complaint. Therefore, nothing in the record suggests that Plaintiff's EEO complaint on August 24, 2009 brought about any new pattern of heightened antagonism.[6]

---

[6] In fact, Plaintiff indisputably had previous issues with management regarding the submission of overtime, and "[a]n employee cannot easily establish a causal connection between his protected activity and the alleged retaliation when he has received significant negative evaluations before engaging in the protected activity." Ross v. Gilhly, 755 F.3d 185, 194 (3d Cir. 2014); see also Ward v. Ingersoll-Rand Co. Trane U.S. Inc., ____ F. App'x ____, 2017 WL 156309, at *5 (3d Cir. Apr. 28, 2017)(finding no pattern of antagonism where prior to plaintiff's injury, he was subject to "several disciplinary actions by his supervisors"). Here, Plaintiff's discipline for unauthorized overtime did not just start occurring after August 24, 2009; in fact, Plaintiff was charged with unsatisfactory job performance in July and August 2008 for failing to follow USPS procedures involving requesting overtime. (Ex. 9-10 to Pl. Sur-Reply). There is no evidence that the pattern of Plaintiff's violations of overtime procedures and USPS' reaction to it changed to a greater antagonism after August 24, 2009.

### 3. Inconsistent Explanations

Plaintiff additionally suggests inconsistent explanations from Mr. Schofield and Postmaster Hunley demonstrate causation. As explained supra, Plaintiff can meet her burden to demonstrate the causal link between the protected activities and adverse employment action taken by proffering evidence of an employer's inconsistent explanation for taking an adverse employment action. See Waddell v. Small Tube Products, Inc., 799 F.2d 69, 73 (3d Cir. 1986)(explaining that the district court appropriately considered the employers' providing inconsistent explanations for its refusal to rehire Plaintiff); see also EEOC v. L.B. Foster Co., 123 F.3d 746, 755 (3d Cir. 1997) (considering the inconsistencies in the supervisor's testimony as to why he would not provide a reference for the former employee as evidence of retaliation). Specifically, Plaintiff explains that on March 23, 2010, Mr. Schofield testified that he was not aware of Plaintiff's prior EEO activity, yet provided an affidavit on March 23, 2009 discussing Plaintiff's Complaint 4C-080-0015-09 (Opp'n at 3; Ex. 15 to Pl. Sur-Reply). Additionally, on March 23, 2010, Postmaster Hunley testified that she had been indirectly apprised of Plaintiff's EEO activity but provided an affidavit on March 27, 2010 and testified that she was not involved in the instruction to tell Plaintiff to clock out and go home on August 24, 2009. (Id.)

However, these alleged inconsistencies do not speak to explanations for Defendant taking the respective adverse employment actions against Plaintiff. Mr. Schofield has consistently explained that he sent Plaintiff home on August 24, 2009 because of her belligerent behavior. (Def. SMF ¶ 74.) Postmaster Hunley has consistently explained that she put Plaintiff on leave on October 5 because she had a "screaming tirade" on the workroom floor, threw a piece of paper on Postmaster Hunley's desk, screamed at the Postmaster, ignored several instructions to leave the building, and slammed her hand on the Postmaster's desk (Taylor Decl., Ex. P, October 9, 2009 Emergency Placement Letter). Finally, Postmaster Hunley issued the Notice of Removal on October 20, 2009 because of Plaintiff's actions on October 5, 2009 as well as the three days on which Plaintiff failed to return to the office in the time allotted prior to her departure and which then resulted in unauthorized overtime. (Def. SMF ¶¶ 59-60.) Offering bare statements (without providing the underlying affidavits) that her supervisors may have known about her prior EEO activity does not support any inconsistent explanations regarding why they took their respective adverse actions against her.

In short, Plaintiff's allegation of discriminatory animus is unsupported by either temporal proximity, a pattern of antagonism, inconsistent explanations, or the record as a whole.

Because Plaintiff has failed to adduce evidence of a causal connection between her protected activities and the adverse actions, summary judgment is appropriate.  No reasonable jury could conclude that Plaintiff's engagement in filing EEO complaints was the likely reason for the adverse employment actions on August 24, October 5, and October 20, 2009.

### B. Legitimate Business Reasons and Pretext

Because the Court finds that Plaintiff has not established a prima facie case of retaliation, the Court need not reach step two and step three of the analysis.  However, even assuming that Plaintiff had established a prima facie case of retaliation, Defendant has adduced significant evidence supporting his articulated, legitimate nondiscriminatory reason for disciplining Plaintiff (i.e., Plaintiff's inappropriate, insubordinate and threatening behavior on multiple occasions, as well as her failure to conform to the time requirements of the job and associated accrual of unauthorized overtime).

Additionally, Plaintiff has pointed to no facts, beyond her own subjective beliefs, that such reasons were pretextual.  As explained supra, to show pretext, Plaintiff must adduce evidence from which a reasonable fact finder could conclude "both that the [Department's] proffered explanation was false, and that retaliation was the real reason for the adverse employment action." Moore, 461 F.3d at 342 (quoting Krouse v. Am.

_Sterilizer Co._, 126 F.3d 494, 500-01 (3d Cir. 1997)). Plaintiff

has submitted no evidence substantiating her belief that Mr.

Schofield sent her home on August 24, 2009 in retaliation for

her protesting that he stood with a foot her cart as he

confronted her about her work, and the record reveals that Mr.

Schofield was challenging Plaintiff's request for three hours of

overtime that day. When asked whether she thought Postmaster

Hunley's October 5, 2009 decision was in retaliation for prior

filings she made, Plaintiff instead replied that Postmaster

Hunley was "sick" of Plaintiff "challenging the numbers,"

including "the assignments of time and volume for the different

routes." (Marley Dep. 111:14-24.) Additionally, when asked

whether Ms. White said anything about trying to retaliate for

her earlier EEO actions, Plaintiff replied "No. Sharon's not

like that." (Id. at 113:22-25.) Further, Plaintiff stated at

her administrative hearing that "[b]asically I was targeted to

the extent that they were accusing me of being loud and

belligerent. I was belligerent, because I disagreed with the

figures that they were putting in." (Admin Tr. at 23:14-18.)

Again, Plaintiff's categorical allegations of discriminatory

retaliation are undercut by her own testimony and the

surrounding undisputed facts. The Court therefore agrees with

Defendant that Plaintiff's "own testimony and statements

demonstrate her belief that her disciplinary actions arose out

of her vocal protesting of assignments and supervisory instruction, rather than out of her Title VII-protected activity." (Def. Br. at 22-23.)  Thus, summary judgment in favor of Defendant is appropriate because no reasonable jury could conclude that there is circumstantial or direct evidence from which Plaintiff could prove her Title VII retaliation claim.

## V.    CONCLUSION

For all of these reasons, an accompanying Order will be entered.


**May 12, 2017**                              **s/ Jerome B. Simandle**
Date                                          JEROME B. SIMANDLE
                                              Chief U.S. District Judge